IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:08-cv-110

| | |
|---|---|
| SPEEDING GLOBAL CORP., <br><br> Plaintiff, <br><br> vs. <br><br> T2 INTERNATIONAL, LLC, TARA YOUNGBLOOD and TODD YOUNGBLOOD, <br><br> Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS** |

Plaintiff, Speeding Global Corp. ("Speeding"), submits this memorandum of law in support of its Motion to Dismiss Counterclaims 1, 2, 3, 4, 5, 9, 10, and 11 asserted by Counterclaim Defendant T2 Products, LLC, d/b/a T2 International, LLC ("T2") because T2 has failed to plead essential facts in support of its claims for violations of the United Nations Convention on the International Sale of Goods ("CISG") by the Plaintiff. Because the terms and conditions that T2 alleges control the parties' agreement expressly waive the applicability of the CISG, the Court should dismiss Defendant's Counterclaims related thereto.

### INTRODUCTION

T2 and Speeding were introduced to each other in the Fall of 2007 when T2 was looking for a manufacturer to produce personal flotation devices it called NEONOODLES. (Counterclaim ¶¶ 9-10). From approximately, December of 2007 through February of 2008, T2 submitted at least thirteen purchase orders to Speeding for the production of NEONOODLES. (Counterclaim ¶24). A dispute arose between the parties regarding payment for shipment of some of those purchase orders in approximately April of 2008. (Counterclaim ¶¶31-32). Accordingly, Speeding did not release the final shipments to T2 until T2 agreed to pay for the

past due amounts and gave Speeding security for those payments. Subsequently, T2 failed to make the payments it owed to Speeding for those shipments and Speeding filed suit against all Defendants in Iredell County in August of 2008. In September 2008, T2 removed the case to federal court.

T2 filed its Amended Answer on March 20, 2009 adding fifteen counterclaims to its Answer.[1] According to T2, its counterclaims are premised on violations by Speeding of the CISG. (Counterclaim ¶¶1, 6). In support of its counterclaims, T2 attached a number of exhibits, including Exhibit B, which it alleges contained the terms and conditions that applied to all purchase orders between the parties (the "Terms and Conditions"). (Counterclaim ¶21). By its terms, the Terms and Conditions state that it constitutes "the entire agreement between PROSOURCE SERVICES INTERNATIONAL (hereinafter called "PROSOURCE") and Seller" – ostensibly Speeding. The Terms and Conditions go on to state that:

> This Purchase Agreement shall be governed by and construed in accordance with the laws of North Carolina (the "State") and the United States of America (the "United States"), without regard to its choice of law principles. The parties expressly waive the application of the United Nations Convention on the International Sale of Goods.

T2's counterclaims also allege that T2 controls Prosource and can allege claims on it behalf (Counterclaim ¶3); that Prosource solicited the relationship with Speeding (Counterclaim ¶13); and, that its claims are based on the CISG (Counterclaim ¶1). However, the very Terms and Conditions T2 seeks to apply against Speeding make clear that the CISG does not apply to the

---

[1] Because T2's initial Answer did not require a responsive pleading, T2's Amended Answer and Counterclaims was not timely under Rule 15(a)(1)(B). Plaintiff did not consent to the amendment under Rule 15(a)(2) and leave of Court was not given. Plaintiff does not intend to object to the Amended Answer as it is preparing a Motion to Amend its Complaint, that it intends to file imminently and it believes that both parties should be able to amend their pleadings at this stage of the case.

parties agreement. Because the CISG does not apply, Speeding's motion to dismiss should be granted.

## ARGUMENT

I.  **DEFENDANT'S COUNTERCLAIMS UNDER THE CISG SHOULD BE DISMISSED UPON APPLICATION OF THE APPROPRIATE LEGAL STANDARDS.**

A motion to dismiss under Rule 12(b)(6)[2] should be granted "if, after accepting all well-pleaded allegations in the [claim] as true and drawing all reasonable factual inferences from those facts in the [claimant's] favor, it appears certain that the [claimant] cannot prove any set of facts in support of his claim entitling him to relief." Herman v. Lackey, 2007 U.S. Dist. LEXIS 41989, at *4 (W.D.N.C. June 7, 2007). In addition, a Rule 12(b)(6) motion should be granted if the complaint fails to meet "the basic pleading requirement that a [claimant] set forth facts sufficient to allege each element of his claim." Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Bass v. E. I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (same), cert. denied, 540 U.S. 940 (2003).

---

[2]  Most cases discussing Rule 12(b)(6) motions are made by Defendants against a plaintiff's complaint, rather than by plaintiffs against a defendant's counterclaims. However, Rule 12(b) is quite explicit that it applies to counterclaims just as clearly as complaints and therefore the analysis and case law should apply regardless of whether the case references a complaint or counterclaim. Rule 12(b) states in relevant part:

(b)… Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, **counterclaim**, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted,…

Allegations of the claim "must be stated in terms that are neither vague nor conclusory," in order to withstand a 12(b)(6) motion. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 220 (4th Cir. 1994); Herman v. Lackey, 2007 U.S. Dist. LEXIS 41989, at *4 (W.D.N.C. June 7, 2007) (quoting same). "Significantly, although a court must accept as true all material factual allegations in the [claim], the court does not need to accept a [claimant's] 'conclusory allegations regarding the legal effect of the facts alleged.'" Bear Hollow, L.L.C. v. Moberk, L.L.C., 2006 U.S. Dist. LEXIS 36780, at *8 (W.D.N.C. June 5, 2006) (quoting Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995)). Moreover, the United States Supreme Court has recently addressed and adjusted the requirements for a motion to dismiss, stating:

> While a [claim] attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant's] obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The law is also clear that the courts "must accept as true the facts set forth in the exhibits attached to the [claim]." Space Tech. Dev. Corp. v. Boeing Co., 209 Fed. Appx. 236, 239 (2006). However, the courts have stated that while they must accept legal conclusions drawn from the exhibits, they need not accept conclusory allegations in the claim that are contradicted by the attachments. See Jeffrey M. Brown Assocs. v. Roxville Ctr., Inc., 7 F. Ed. Appx. 197, 202 (2001). Indeed the Fourth Circuit has held that "[i]n the event of conflict between the bare allegations of the [claim] and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). In this case, because the Terms and Conditions attached as an exhibit to Defendant T2's

counterclaims contradict the applicability of the CISG to their counterclaims, those claims must be dismissed.

## II. T2'S CLAIMS UNDER THE CISG ARE DIRECTLY CONTRADICTED BY TERMS AND CONDITIONS ATTACHED TO THEIR COUNTERCLAIMS.

T2 has failed to state claims against Speeding under the CISG because as alleged by T2 the terms of the parties agreements expressly waive the applicability of the CISG. Defendants counterclaims allege multiple causes of action for breach of the CISG, on the grounds of breach of contract, breach of warranties and failure to comport to standard in sample or model. Research reveals that there is very little law interpreting the CISG. Nevertheless, "[t]he United Nations Convention on Contracts for the International Sale of Goods ("the CISG") governs the formation of contracts for the sale of goods between parties whose places of business are located in different member states." Barbara Berry, S.A. de C.V. v. Ken M. Spooner Farms, Inc., 254 Fed. Appx. 646, 647 (9th Cir. Wash. 2007). However, the CISG does not apply in all contracts between parties of two different countries. The law is clear that, "[w]hen two nations are signatories to the CISG, the treaty governs contracts for the sale of goods between parties whose places of business are in those two nations, unless the contract contains a choice of law clause." Schmitz-Werke GMBH + Co., Plaintiff-Appellee, v. Rockland Industries, Inc., 37 Fed. Appx. 687, 691, 2002 U.S. App. LEXIS 12336 *9 (4th Cir., Jun. 21, 2002) (*citing* CISG, 15 U.S.C. App., Art. 1(1)(a); *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1027-28 (2nd Cir. 1995)). Indeed, the CISG allows the parties to exclude the application of any provision of the CISG, or to change the effect of any provision. It states in Chapter I, Article 6, that "[t]he parties may exclude the application of this Convention, or, . . . derogate from or vary the effect of any of its provisions." CISG, 15 U.S.C. App., Art. 1(6). Thus, the CISG allows the parties to waive its application and to determine what law will control their agreement.

In this case, the Terms and Conditions, titled "PURCHASE ORDER TERMS AND CONDITIONS", state that it controls the agreements between the parties. Paragraph 11 of the Terms and Conditions sets forth the governing law for the agreement. It states in relevant part:

> This Purchase Agreement shall be governed by and construed in accordance with the laws of North Carolina (the "State") and the United States of America (the "United States"), without regard to its choice of law principles. The parties expressly waive the application of the United Nations Convention on the International Sale of Goods.

Thus, the Terms and Conditions specifically waive the application of the CISG and instead apply North Carolina law. Moreover, as alleged in its counterclaims, these terms and conditions were drafted by T2, were provided to Speeding and were to apply to all transactions thereafter between the parties. [Counterclaim ¶. 22]

T2's first, second, third, fourth, fifth, ninth, tenth and eleventh counterclaims all assert violations of the CISG. Indeed, T2 alleges that its entire action is premised on violations of the CISG. (Counterclaim ¶ 1). However, the allegations of T2's counterclaim are directly contradicted by the Terms and Conditions. In such a situation the law is clear that the exhibit to the complaint containing the Terms and Conditions will control over contradictory allegations in the complaint. See Space Tech at 239. Thus, the Terms and Conditions control over the allegations and claims alleged in the Counterclaims and the CISG does not apply to this case. See Fayetteville Investors at 1465. Because the CISG does not apply to this case, T2's first, second, third, fourth, fifth, ninth, tenth and eleventh counterclaims all must fail for failure to state a claim and should be dismissed.

This result is consistent with numerous decisions of the federal courts that have considered exhibits to complaints that contradict the allegations of a complaint and thereby defeat the parties underlying claims. See In re: Wade, 969 F.2d 241, 250 (7th Cir. 1992) (holding

that "we determine that from the complaint and its corresponding attachments that dismissal was appropriate as a matter of law"); Gamble v. GMAC Corp., 2009 U.S. Dist. LEXIS 12214 (N.D. Cal. February 18, 2009) (holding that where the exhibit contradicted the allegations as to when a payment was due, the exhibit controlled and therefore the defendant did not breach the contract and dismissal was warranted under Rule 12(b)(6)); In Re: Sun Healthcare Group, Inc, 2002 Bankr. LEXIS 447 *8 (Bankr. D. Del. May 2, 2002) (dismissing Plaintiff's claim for specific performance where "[t]he documents that [Plaintiff] attached to its Complaint demonstrate that there was no contract between the parties.")

Moreover, even if the Terms and Conditions did not waive the CISG, the very act of including a choice of law provision for North Carolina law in the Terms and Conditions, has been held to mean that the CISG does not apply. See Rockland Industries at 691, 2002 U.S. App. LEXIS at*9; see also Am. BioPhysics Corp. v. Dubois Marine Specialties, 411 F.Supp. 2d 61, 63 (2006) (holding that inclusion of a choice of law "provision is sufficient to exclude application of the CISG"). Accordingly, pursuant to T2's own Terms and Conditions North Carolina law controls the terms of the parties agreement rather than the CISG. Indeed, the CISG contemplates and allows the parties to waive the CISG. See CISG, 15 U.S.C. App., Art. 1(6). For this reason, T2's own Terms and Conditions defeat their claims for violations of the CISG and those claims must be dismissed.

Finally, the Terms and Conditions apply to any agreement between Speeding and Prosource and any claim T2 makes on behalf of Prosource. The relationship between T2 and Prosource is such that it cannot claim that Prosource is not bound by T2 and Speeding's agreements. T2 has alleged that it established Prosource and Prosource provides services for T2, as well as the fact that T2 has control of Prosource as its parent and can assert claims on its

behalf. (Counterclaim ¶3). Moreover, T2 alleges that Prosource solicited and acted on behalf of T2 in contacting Speeding and obtaining quotes for the production of the NEONOODLES. (Counterclaim ¶13). T2 also alleged that the Terms and Conditions "would apply to each purchase order submitted thereafter" between the parties. (Counterclaim ¶21). Finally, and most importantly, on its face, the Terms and Conditions are explicitly between Prosource and Speeding rather than being between T2 and Speeding See (Counterclaim Ex. B, ¶1) (stating that the Terms and Conditions constitute "the entire agreement between PROSOURCE SERVICES INTERNATIONAL (hereinafter called "PROSOURCE") and Seller"). For all these reasons, the Terms and Conditions apply to any agreements between Speeding and Prosource. Because the Terms and Conditions apply to T2's claims related to Prosource, as argued above, any and all claims (Counterclaims 9, 10 and 11) under the CISG must fail.

## CONCLUSION

For the foregoing reasons, the Court should grant Speeding's motin and should dismiss Counterclaims 1, 2, 3, 4, 5, 9, 10, and 11 asserted by Counterclaim Defendant T2 pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

This the 15th day of May, 2009.

HORACK, TALLEY, PHARR & LOWNDES, P.A.
s/John W. Bowers
John W. Bowers/NC Bar No. 24133
*Attorneys for Plaintiff*
301 South College Street, Suite 2600
Charlotte, NC 28202-6038
Telephone: (704) 377-2500
Facsimile: (704) 372-2619
JBowers@Horacktalley.com

## CERTIFICATE OF SERVICE BY ELECTRONIC FILING

This is to certify that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS** was this date served on counsel of record for the foregoing parties electronically through the Court's Notice of Electronic Filing pursuant to Rule II(B)(3) of the North Carolina Federal Rules of Court, Western District:

> Mark W. Kinghorn, Esquire
> Amy R. Worley, Esquire
> McGuire Woods, LLP
> 100 North Tryon Street, Suite 2900
> Charlotte, North Carolina 28202
> AWorley@mcguirewoods.com
> MKinghorn@mcguirewoods.com

This the 15th day of May, 2009.

>                    HORACK, TALLEY, PHARR & LOWNDES, P.A.
>
>
>                    s/John W. Bowers_____